**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| Timothy Tangen,<br>        Plaintiff<br>v.<br>Fluor Intercontinental, Inc., et al.,<br>        Defendants | C/A No.: 6:21-cv-00335-JD |
| Marissa Brown,<br>        Plaintiff<br>v.<br>Fluor Intercontinental, Inc., et al.,<br>        Defendants | C/A No.: 6:21-cv-01427-JD |
| Shelby Iubelt, individually, on behalf of the Estate of Tyler Iubelt, and as next friend of V.I., minor,<br>        Plaintiff<br>v.<br>Fluor Intercontinental, Inc., et al.,<br>        Defendants | C/A No.: 6:21-cv-01420-JD |
| Lakeia Stokes,<br>        Plaintiff<br>v.<br>Fluor Intercontinental, Inc., et al.,<br>        Defendants | C/A No.: 6:21-cv-01086-JD |
| Maggie Bilyeu,<br>        Plaintiff<br>v.<br>Fluor Intercontinental, Inc., et al.,<br>        Defendants | C/A No.: 6:21-cv-01078-JD |
| Addie Ford,<br>        Plaintiff<br>v.<br>Fluor Intercontinental, Inc., et al.,<br>        Defendants | C/A No.: 6:21-cv-01159-JD |
| Marvin Branch,<br>        Plaintiff<br>v. | C/A No.: 6:21-cv-01083-JD |

Fluor Intercontinental, Inc., et al.,
     Defendants

                                  C/A No.: 6:21-cv-01250-JD

Julianne Perry, individually, on behalf of the
Estate of John Perry, and as next friend of
L.P. and G.P., minors,
     Plaintiff
v.
Fluor Intercontinental, Inc., et al.,
     Defendants                         C/A No.: 6:21-cv-01084-JD

Haylee Rodriguez,
     Plaintiff
v.
Fluor Intercontinental, Inc., et al.,
     Defendants                         C/A No.: 6:21-cv-01085-JD

India Sellers,
     Plaintiff
v.
Fluor Intercontinental, Inc., et al.,
     Defendants                         C/A No.: 6:21-cv-01007-JD

Samuel Gabara,
     Plaintiff
v.
Fluor Intercontinental, Inc., et al.,
     Defendants                         C/A No.: 6:21-cv-01017-JD

Chris Colavita,
     Plaintiff
v.
Fluor Intercontinental, Inc., et al.,
     Defendants                         C/A No.: 6:21-cv-01018-JD

Robert Healy,
     Plaintiff
v.
Fluor Intercontinental, Inc., et al.,
     Defendants

**Plaintiffs' Response to Fluor Defendants'**
**Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction**
**Based on Political-Question Doctrine and South Carolina Door Closing Statute**

TABLE OF CONTENTS

I.      Background ........................................................................................................... 2

        A.      Nayeb detonated a suicide bomb after sneaking away at the end of his work
                shift. ......................................................................................................... 2

        B.      Fluor was required to supervise Nayeb while he was at work and ensure he
                left the Base when his shift was over. ..................................................... 5

        C.      The military determined that Fluor failed to comply with its contractual
                requirements to supervise Nayeb, which allowed him to construct and
                detonate the bomb. .................................................................................... 8

II.     This Court should deny the Defendants' Rule 12(b)(1) Motion to Dismiss for Lack of
        Subject-Matter Jurisdiction  Based on the Political-Question Doctrine ........................... 9

        A.      Judge Hendricks previously determined at the Rule 12(b) stage that the
                political-question doctrine did not bar claims against Fluor regarding the
                bombing. ................................................................................................. 12

        B.      Fluor was not under the United States military's direct control. .......................... 14

        C.      This case does not require this Court to question the military's judgment. .......... 16

                1.      South Carolina law—not Afghanistan law—applies. ............................... 17

                        a.      Fluor has not established that Afghanistan law applies to torts
                                committed at the United States military base at Bagram. ............. 18

                        b.      Fluor's evidence of Afghanistan law is insufficient because it
                                applies the law of the prior Afghanistan government, not the
                                new Taliban government that took control in August 2021. ........ 20

                        c.      Even if Fluor had provided evidence of current Afghanistan
                                law, applying it here would violate South Carolina public
                                policy because Afghanistan uses Sharia law as interpreted by
                                the Taliban. ................................................................................. 22

                2.      Under South Carolina law the United States military's conduct and
                        judgment cannot be considered when apportioning responsibility. .......... 23

        D.      The separation-of-powers doctrine does not deprive this Court of jurisdiction. .. 24

III.    This Court should deny Fluor's Rule 12(b)(1) Motion to Dismiss for Lack of Subject-
        Matter Jurisdiction  Based on the South Carolina Door Closing Statute ......................... 25

        A.      The South Carolina Door Closing Statute is not jurisdictional, so it is not
                proper for a Rule 12(b)(1) motion to dismiss for lack of subject-matter
                jurisdiction. ............................................................................................. 25

B.     This Court should deny Fluor's Rule 12(b)(1) Motion to Dismiss Based on the South Carolina Door Closing Statute even if the statute were jurisdictional. ...... 28

1.     The South Carolina Door Closing Statute does not apply because the contract at issue in the case was administered out of Fluor's South Carolina office. ......................................................................................... 30

2.     Fluor has not established that the Plaintiffs could obtain full relief in any state other than South Carolina. ......................................................... 31

IV.     Conclusion ............................................................................................................... 34

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982) ................................................................ 27

*Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516 (4th Cir. 2014) ................................. 12, 14

*Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147 (4th Cir. 2016) ..................... 11, 12, 14, 15

*Alley v. Yadkin County Sheriff Dep't*, 1:16CV100, 2017 WL 5635946 (M.D.N.C. Jan. 27, 2017) ...................................................................................................................... 26

*Al-Zahrahni v. Rumsfeld*, 684 F. Supp.2d 103 (D.D.C. 2010)....................................................... 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 27

*Baker v. Carr*, 369 U.S. 186 (1962)............................................................................................ 11, 35

*Boone v. Boone*, 546 S.E.2d 191 (S.C. 2001) ......................................................................... 17, 22

*Bumgarder v. Keene Corp.*, 593 F.2d 572 (4th Cir. 1979) ................................................. 29, 31, 32

*Burna v. United States*, 240 F.2d 720 (4th Cir. 1957) .................................................................. 19

*Cobb v. United States*, 191 F.2d 604 (9th Cir. 1951)..................................................................... 19

*DaFonte v. Up-Right, Inc.*, 828 P.2d 140 (Cal. 1992) ................................................................... 33

*Dixon v. Edwards*, 290 F.3d 699 (4th Cir. 2002)........................................................................... 22

*Doe v. McKesson*, 945 F.3d 818 (5th Cir. 2019), *cert. granted, judgment vacated on other grounds*, 141 S. Ct. 48 (2020)................................................................................................. 26

*Draughon v. Evening Star Holiness Church of Dunn*, 843 S.E.2d 72 (N.C. 2020)...................... 33

*Farmer v. Monsanto Corp.*, 579 S.E.2d 325 (S.C. 2003) ............................................................. 26

*Fung Lin Wah Enters. Ltd. v. E. Bay Imp. Co.*, 465 F. Supp. 2d 536 (D.S.C. 2006) ................... 26

*GE Power Elecs., Inc. v. Cornell-Dubilier Elecs., Inc.*, CV 8:16-708-MGL, 2016 WL 5815837 (D.S.C. Oct. 5, 2016) ............................................................................................. 28

*Genetic Techs. Ltd. v. Glaxosmithkline, LLC*, 1:12-CV-299, 2014 WL 12160649 (M.D.N.C. Aug. 22, 2014) ..................................................................................................... 27

*Hencely v. Fluor Corp.*, CV 6:19-00489-BHH, 2021 WL 3604781 (D.S.C. Aug. 13, 2021) ...................................................................................................................................... 13

*Hencely v. Fluor Corp., Inc.*, 475 F. Supp. 3d 464 (D.S.C. 2020), reconsideration denied sub nom. *Hencely v. Fluor Corp.*, 6:19-CV-00489-BHH, 2020 WL 5269795 (D.S.C. Sept. 4, 2020) ..................................................................................... 28, 29, 30, 31, 33

*Hencely v. Fluor Corp., Inc.*, 6:19-CV-00489-BHH, 2020 WL 2838687 (D.S.C. June 1, 2020) ...................................................................................... 13, 14, 15, 23, 32

*In re KBR, Inc.*, 893 F.3d 241 (4th Cir. 2018) ................................................................. 12, 14, 15

*In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326  (4th Cir. 2014).................................. 10, 12, 14, 15

v

*Int'l Sec. & Def. Mgmt., LLC v. Fluor Intercontinental, Inc*., No. B243384, 2013 WL 4761107 (Cal. Ct. App. Sept. 5, 2013) ........................................................................ 31

*Klebanow v. New York Produce Exch*., 344 F.2d 294 (2d Cir. 1965) .......................................... 26

*Kotowski v. A. C. & S. Co*., No. CIV. A. 86C-JN-50, 1990 WL 81859 (Del. Super. Ct. June 6, 1990)............................................................................................................................ 33

*Loquasto v. Fluor Corp., Inc*., 512 F. Supp. 3d 728 (N.D. Tex. 2021) ...................................... 32

*Machin v. Carus Corp*., 799 S.E.2d 468 (S.C. 2017) ................................................................. 23

*McKenzie v. E.E.O.C.*, 749 F. Supp. 115 (W.D.N.C. 1990) ......................................................... 27

*Meredith v. United States*, 330 F.2d 9 (9th Cir. 1964).................................................................. 19

*Nash v. Tindall Corp*., 650 S.E.2d 81 (S.C. Ct. App. 2007)......................................................... 17

*Norat v. Fluor Intercontinental, Inc*., 6:14-CV-04902-BHH, 2018 WL 1382666 (D.S.C. Mar. 19, 2018)................................................................................................... 12, 14, 15

*Pickens v. Mgmt. & Training Corp*., 316CV00913CWRFKB, 2017 WL 5559847 (S.D. Miss. Nov. 17, 2017)................................................................................................... 24

*Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738 (4th Cir. 1980).............................................. 29

*Riegle v. Fed. Open Mkt. Comm*., 656 F.2d 873 (D.C. Cir. 1981) disapproved of on other grounds by *Melcher v. Fed. Open Mkt. Comm*., 836 F.2d 561 (D.C. Cir. 1987) ......................... 24

*Serbian E. Orthodox Diocese for the United States & Canada v. Milivojevich*, 426 U.S. 696 (1976)....................................................................................................................... 22

*Smith v. Mack Trucks, Inc*., 991 F.2d 791 (Table) (4th Cir. 1993).............................................. 28

*Snell v. Golden Rule Ins. Co.*, No. 6:08-3555-MHM, 2009 WL 185723 (D.S.C. Jan. 23, 2009) ................................................................................................................... 30, 31

*Strickland v. Turner*, 9:15-CV-275-PMD-BM, 2016 WL 1570166 (D.S.C. Apr. 19, 2016) ....... 27

*Szantay v. Beech Aircraft Corp.*, 349 F.2d 60 (4th Cir. 1965)..................................................... 29

*Taylor v. Kellogg Brown & Root Servs., Inc*., 658 F.3d 402 (4th Cir. 2011) 10, 11, 12, 13, 14, 15, 16, 24

*Tozer v. LTV Corp*., 792 F.2d 403 (4th Cir. 1986) ..................................................................... 24

*Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc*., 463 F. Supp. 2d 544 (D.S.C. 2006) ............ 30

*United States v. Spelar*, 338 U.S. 217 (1949) ............................................................................. 19

*Walker v. Harmon*, CV 15-5037-JLV, 2016 WL 4083726 (D.S.D. Aug. 1, 2016) ...................... 26

*White Tail Park, Inc. v. Stroube*, 413 F.3d 451 (4th Cir. 2005).................................................... 27

*Wood v. Navistar, Inc*., No. 130960-U, ¶ 26, 2014 WL 28885448 (2014 IL App (1st) .............. 33

**Statutes**

28 U.S.C. § 2680(k) .................................................................................................................. 20

S.C. CODE ANN. § 15-38-15....................................................................................................... 23

S.C. CODE ANN. § 15-5-150............................................................................................ 25, 29, 30

**Other Authorities**

https://apnews.com/article/religion-afghanistan-kabul-taliban-22f5107f1dbd19c8605b5b5435a9de54........................................................................................ 23

https://en.wikipedia.org/wiki/Islamic_Republic_of_Afghanistan ............................................... 21

https://observers.france24.com/en/asia-pacific/20210426-taliban-tribunal-gives-woman-40-lashes-for-talking-to-a-man-on-the-phone.................................................................................. 23

https://www.aa.com.tr/en/asia-pacific/taliban-to-implement-monarch-era-constitution-in-afghanistan/2377376 ..................................................................................................................... 21

https://www.aljazeera.com/news/2021/8/23/hold-the-taliban-and-sharia-law-in-afghanistan ................................................................................................................................... 21

https://www.bbc.com/news/world-asia-58709353; https://www.bbc.com/news/world-asia-58742581 ..................................................................................................................................... 22

https://www.constituteproject.org/constitution/Afghanistan_2004.pdf?lang=en ........................ 21

https://www.hindustantimes.com/world-news/men-and-women-cannot-work-together-taliban-say-sharia-law-doesn-t-allow-it-101631554700173.html ................................................. 21

https://www.hindustantimes.com/world-news/what-is-there-in-1964-s-monarchy-constitution-that-taliban-plan-to-adopt-101632934277381.html................................................. 21

https://www.justsecurity.org/78051/between-legitimacy-and-control-the-talibans-pursuit-of-governmental-status ............................................................................................................... 21

https://www.pri.org/stories/2021-09-10/taliban-s-islamic-emirate-afghanistan-based-specific-ideology; https://apnews.com/article/afghanistan-taliban-kabul-bagram-e1ed33fe0c665ee67ba132c51b8e32a5 ..................................................................................... 21

https://www.voanews.com/a/south-central-asia_what-shariah/6209938.html ............................ 21

https://www.voanews.com/a/taliban-say-they-will-use-parts-of-monarchy-constitution-to-run-afghanistan-for-now/6248880.html.......................................................................................... 21

https://www.washingtonpost.com/world/2021/08/19/sharia-law-afghanistan-taliban/ ................ 21

Security and Defense Cooperation Agreement (available at https:/www.state.gov/15-101/) ...................................................................................................................................... 18, 19

**Rules**

FED. R. CIV. P. 12(b)(1) .......................................................ii, iii, iv, 1, 9, 10, 12, 25, 26, 27, 28, 34

FED. R. CIV. P. 12(b)(6) .............................................................................................. 26, 27, 28

FED. R. CIV. P. 12(d) ................................................................................................................. 27

FED. R. EVID. 201....................................................................................................................... 21

**Treatises**

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1294 (3d ed. 2018) ........................................................................................................ 26

The Plaintiffs file this response to Fluor's Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction Based on the Political-Question Doctrine and the South Carolina Door Closing Statute.[1]

This Court should deny Fluor's Rule 12(b)(1) motion based on the political-question doctrine because:

- Fluor was not "under the 'plenary' or 'direct' control of the military";[2] and

- This case will not "require the judiciary to question actual, sensitive judgments made by the military."[3]

This Court should deny Fluor's Rule 12(b)(1) motion based on the fact that the South Carolina Door Closing Statute is not jurisdictional, so it does not support a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.[4] Even if a Rule 12(b)(1) motion were theoretically proper, it should nonetheless be denied here for two independent reasons:

- The Door Closing Statute does not apply because the contract at issue in the case was centrally administered out of Fluor's South Carolina office;[5] and

---

[1] ECF No. 67; ECF No. 67-1. This case has been consolidated into *Timothy Tangen v. Fluor Intercontinental, Inc., et al.*, C/A No. 6:21-CV-00335-JD. ECF No. 58-1. The "Plaintiffs" are Timothy Tangen; Marissa Brown; Shelby Iubelt, individually, on behalf of the Estate of Tyler Iubelt, and as next friend of V.I., minor; Lakeia Stokes; Maggie Bilyeu; Addie Ford; Marvin Branch; Julianne Perry, individually, on behalf of the Estate of John Perry, and as next friend of L.P. and G.P., minors; Haylee Rodriguez; India Sellers; Samuel Gabara; Chris Colavita; and Robert Healy. "Fluor" refers to Defendants Fluor Intercontinental, Inc. and Fluor Government Group International, Inc.

[2] *See below* at § II(B).

[3] *See below* at § II(C).

[4] *See below* at § III(A).

[5] *See below* at § III(B)(1).

1

- Fluor has not established that the Plaintiffs could obtain full relief in any state other than South Carolina.[6]

## I.     Background

On Veterans Day 2016, Ahmad Nayeb detonated a bomb at the Bagram Air Base in Afghanistan.[7] Five men were killed, and seventeen soldiers were badly injured. Nayeb was an employee of Alliance Project Services, Inc. ("APS") and was primarily supervised and managed by Fluor.[8] Fluor failed to properly supervise Nayeb, which allowed him to build and explode the bomb.[9]

### A.     Nayeb detonated a suicide bomb after sneaking away at the end of his work shift.

On the morning of Saturday, November 12, 2016, more than 200 personnel residing at the Base were gathering for a Veterans Day 5k race set to begin at 6:15 a.m.[10] The meeting point for the race was an area called the "Disney Clamshell."[11] Nayeb was also on the Base.[12]

Nayeb worked at Fluor's HAZMAT work center within Fluor's Non-Tactical Vehicle Yard at the Base.[13] Bryan Wilson, Fluor's Security Director, admitted that Nayeb was not supposed to

---

[6] *See below* at § III(B)(2).

[7] Tangen ECF No. 1 at 8–19. "Tangen ECF No. ___" refers to documents filed in the lead *Tangen* case. The page numbers for documents filed on the Court's ECF system refer to the ECF page numbers at the top of the page, not the page numbers on the original document.

[8] Deposition of Fluor Security Director Bryan Wilson at 31, 63, attached as Ex. A; Ex. 7 to Ex. A at 8; Deposition of APS' owner Tod Nickles at 5, attached as Ex. B. APS was the Fluor subcontractor that actually employed Nayeb. Ex. B at 8; Ex. B at 13 (Nayeb "was employed by APS by direction of Fluor.").

[9] Ex. A at 67.

[10] Tangen ECF No. 1 at 1; Ex. 7 to Ex. A at 1.

[11] Tangen ECF No. 1 at 1; Ex. 7 to Ex. A at 1.

[12] Tangen ECF No. 1 at 1.

[13] Tangen ECF No. 1 at 2; Ex. 7 to Ex. A at 7.

2

be on the Base on the morning of November 12, 2016, after his shift ended.[14]   Fluor was required

to ensure that Afghan nationals like Nayeb were physically escorted off the Base at the end of their

work shifts.[15]

Nayeb was supposed to have been escorted off the Base by bus at 4:45 a.m. that morning,

at the end of his shift.[16]   But that did not happen.[17]   On November 12, 2016, instead of being

escorted off the Base by bus at the end of his shift, Nayeb walked—totally unsupervised by the

Defendants—toward the assembly point for the Veterans Day 5k race.[18]

That morning, a group of soldiers had gathered at the Clamshell, intending to conduct a

combatives training class.[19]   Upon arrival, they saw that the 5k run would be taking place, as the

organizers were preparing for the event.[20]   The soldiers decided to hold their training at another

facility, so they left the Clamshell and began walking alongside Disney Drive towards the alternate

location.[21]   Meanwhile, Fluor employees Jerrold Reeves and Peter Provost, both avid runners, left

---

[14] Ex. A at 42.

[15] Tangen ECF No. 1 at 2; Ex. B at 111.

[16] Tangen ECF No. 1 at 2.

[17] Ex. B at 18-19, 44.

[18] Tangen ECF No. 1 at 2; Ex. B at 18-19, 44.

[19] Tangen ECF No. 1 at 2.

[20] *Id.*

[21] *Id.*

their quarters and headed towards the Clamshell for the 5k run.[22]   They also traveled alongside

Disney Drive towards the Clamshell.[23]   It was still early in the morning and dark.[24]

By all accounts, Nayeb intended to travel to the Clamshell and detonate his bomb among

the hundreds of people who would be gathering there later that morning for the race.[25]   Nayeb

attempted to hide between several concrete bunkers along the walkway.[26]   The soldiers, as well

as Reeves and Provost, were approaching Nayeb from different directions.[27]   Unbeknownst to

them, they were converging on Nayeb.[28]   At some point, Nayeb realized that he would be caught

and would not reach his intended target.[29]   Reeves and Provost were closest to the bomber when

Nayeb jumped up, faced them, and detonated his bomb.[30]   Reeves and Provost sustained a direct

hit and likely died immediately.[31]   The soldiers, also within 15 feet of the bomber, took shrapnel

directly from the bomb and also as ricochets off of the concrete bunkers.[32]  Other soldiers sustained

severe and life-altering injuries.[33]

---

[22] *Id.*

[23] Tangen ECF No. 1 at 3.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

**B. Fluor was required to supervise Nayeb while he was at work and ensure he left the Base when his shift was over.**

Wilson admitted that it was Fluor's responsibility to supervise Nayeb's "day-to-day work" on the Base.[34]  Wilson also admitted that "Nayeb's work performance [was] supervised by Fluor while he was employed at the Bagram Airfield nontactical vehicle yard."[35]  He further admitted that under the LOGCAP contract, it was Fluor's duty to "provide the necessary supervision for personnel required to perform this contract" and that Fluor was "responsible for oversight of such personnel."[36]

Nayeb was an APS employee, but he performed work for Fluor and was supervised by Fluor.[37]  So Nayeb "either had an APS or Fluor supervisor for his day-to-day work activity."[38]  Wilson admitted that there was no one in the military supervising Nayeb on the Base—instead, supervising his work "was Fluor's job."[39]  While the United States military controlled the Base as a whole, "Fluor had supervision at the work area."[40]

---

[34] Ex. A at 18; *see also* Ex. A at 60.

[35] Ex. A at 57.

[36] Ex. A at 61-62; Ex. 3 to Ex. A at 5.

[37] Ex. A at 31, 63.

[38] Ex. A at 31.

[39] Ex. A at 32; Ex. B at 107 (Nickles was "not aware of any military personnel supervising Nayeb while he was doing his actual work").

[40] Ex. B at 26; Ex. 7 to Ex. A at 8 ("Fluor is responsible for all of its employees, subcontractors, and subcontractor employee actions").

5

APS handled scanning its employees in and out, keeping track of their hours worked, and paying them.[41] But Fluor supervised the APS employees like Nayeb regarding their work.[42] At the time of the bombing, Nayeb "was under the direct accountability of the Fluor department supervisor."[43]

Wilson admitted that under its contract with the military, Fluor was "responsible to provide transportation and supervision necessary for its employees to accomplish their work."[44] Wilson admitted that Fluor employees "served as escorts for local nationals who worked in the nontactical vehicle yard."[45] Wilson also admitted that Fluor and APS employees "were responsible for supervising the transport of local nationals from the entry control point to the nontactical vehicle yard and from the nontactical vehicle yard back to the entry control point at the shift change."[46] "Fluor was responsible for transporting Nayeb from the badging/clocking-in station to the work area and back."[47] It was Fluor's policy that "local national employees, including Nayeb, were to be physically escorted from the work site by Fluor."[48]

Wilson admitted that Nayeb was "supposed to be immediately escorted off the Base" after he finished his work.[49] Wilson also admitted that "Fluor and APS are supposed to make sure that

---

[41] Ex. B at 21.

[42] Ex. B at 25; Ex. B at 106 ("Nayeb's work activities were supervised by Fluor").

[43] Ex. B at 93.

[44] Ex. A at 76.

[45] Ex. A at 78-79.

[46] Ex. A at 79.

[47] Ex. B at 111.

[48] *Id.*

[49] Ex. A at 42.

6

the escort happens."[50]  In this lawsuit, the Plaintiffs have alleged that Nayeb signed out after his shift ended but was not "escorted off the Base, as per policy."[51]  Wilson admitted that he could not dispute that and that this was "a strong theory."[52]

Wilson admitted that the military had put "escort policies in place" that Fluor was supposed to adhere to for Afghan nationals like Nayeb.[53]  Nayeb was clocked in on November 11, 2016, but no records showed that he ever clocked out that day or on November 12, 2016, the day of the explosion.[54]  Wilson admitted that an APS employee signed Nayeb out at the end of the shift that day and stated that "all local nationals" were accounted for before the bus left for the Base gate.[55]  At that point, Nayeb was supposed to "[g]et on a bus and leave the Base."[56]  The rules required that "when you sign out, you leave."[57]  Fluor knew that was the rule.[58]  Wilson admitted that Fluor "enforce[d] the rules."[59]  But—as Wilson admitted—Nayeb "did not exit the Base."[60]

Nayeb exploded the bomb shortly after his work ended, when he should have been off the Base.[61]  The place where Nayeb exploded the bomb was "a little over a mile" from his work

---

[50] Ex. A at 43.

[51] Ex. A at 44.

[52] *Id.*

[53] Ex. A at 34.

[54] Ex. B at 18-19.

[55] Ex. A at 34.

[56] Ex. A at 35.

[57] Ex. A at 37.

[58] Ex. A at 38.

[59] *Id.*

[60] Ex. A at 34.

[61] Ex. A at 32.

location.[62]  Wilson admitted that Nayeb either took a bus or walked to the location where he detonated the bomb.[63]

## C. The military determined that Fluor failed to comply with its contractual requirements to supervise Nayeb, which allowed him to construct and detonate the bomb.

Wilson claimed that Fluor supervised Nayeb "in accordance with government regulations and requirements."[64]  Wilson admitted that the "U.S. military expects Fluor to follow the contract."[65]

But Wilson admitted that the United States military determined that "it is indisputable that Fluor did not comply with the key contractual requirements of the contract, namely in the areas of supervision of local national labor and adherence to escort requirements."[66]  Wilson also admitted that the military found that "Fluor failed to ensure the local national employee was properly escorted."[67]  Wilson admitted that the military found that "the suicide bomber managed to leave the work facility unescorted, which violated policy."[68]  The military determined that Fluor failed to "reasonably supervise" Nayeb at the nontactical vehicle yard, where he worked.[69]

The military also determined that Fluor's "lack of reasonable supervision facilitated Nayeb's ability to freely acquire most of the components necessary for the construction of the

---

[62] Ex. A at 33.

[63] *Id*.

[64] Ex. A at 58.

[65] Ex. A at 40.

[66] Ex. A at 23-24; Ex. 2 to Ex. A at 2.

[67] Ex. A at 25; Ex. 2 to Ex. A at 2.

[68] Ex. A at 26; Ex. 2 to Ex. A at 2.

[69] Ex. A at 63. The military found that Nayeb had been caught sleeping while he should have been working. Ex. A at 68; Ex. 7 to Ex. A at 12.

8

suicide vest" and the "freedom of movement to complete its construction."[70]  While Wilson disputed that determination, he could not provide any evidence on how "Nayeb acquired most of the components necessary for the construction of the suicide vest."[71]

The military found that "Fluor's systemic lack of reasonable supervision enabled Nayeb to go undetected from 0445 until 0538 on 12 November, '16, which coincides with the average walking time of 53 minutes from the nontactical vehicle yard to the blast site."[72]

When asked whether Nayeb not being properly escorted off the Base had anything "to do with the U.S. Government"—as opposed to being a Fluor and APS issue only—Wilson admitted that he could not "confirm or deny" that the U.S. Government had anything to do with that.[73] Wilson admitted that he "cannot say" whether Nayeb not being properly escorted had anything "to do with the United States Army or the Air Force."[74]

## II.    This Court should deny the Defendants' Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction Based on the Political-Question Doctrine

Fluor argues that the political-question doctrine makes the Plaintiffs' claims nonjusticiable, so—according to Fluor—this Court does not have subject-matter jurisdiction over this case.[75] Fluor, therefore, seeks to dismiss the Plaintiffs' claims under Federal Rule of Civil Procedure

---

[70] Ex. A at 67; Ex. 7 to Ex. A at 12.

[71] Ex. A at 68.

[72] Ex. A at 82; Ex. 7 to Ex. A at 15.

[73] Ex. A at 37.

[74] Ex. A at 38.

[75] ECF No. 67 at 4; ECF No. 67-1 at 22-40.

12(b)(1) for lack of subject-matter jurisdiction.[76]  As explained below, Fluor is incorrect, and the political-question doctrine does not bar the Plaintiffs' claims.

Under the political-question doctrine, "the judiciary is deprived of jurisdiction to assess decisions exclusively committed to a separate branch of government."[77]  While "most military decisions lie solely within the purview of the executive branch," the fact that a government contractor "was acting under orders of the military does not, in and of itself, insulate the claim from judicial review."[78]  Instead, a court "cannot categorize such a case as nonjusticiable without delving into the circumstances at issue."[79]

The United States Supreme Court has set out six factors a court should consider when deciding whether a case presents a political question:

1. A "textually demonstrable constitutional commitment of the issue to a coordinate political department,"

2. A "lack of judicially discoverable and manageable standards for resolving" the issue,

3. The "impossibility of deciding [the issue] without an initial policy determination of a kind clearly for nonjudicial discretion,"

4. The "impossibility of a court's undertaking independent resolution [of the issue] without expressing lack of the respect due coordinate branches of government,"

---

[76] ECF No. 67 at 4; ECF No. 67-1 at 22-40. Fluor argues that the Plaintiffs do not have standing to sue for breach of contract as third-party beneficiaries. ECF No. 67-1 at 13, 44. But that is not at issue in this motion; instead, Fluor raised that in a separate motion that this Court has denied. ECF No. 64-2 at 44-50; ECF No. 70 (the Court denies Defendants' 14, 64, and 66 Rule 12(b)(6) motions without prejudice and with leave to refile pending the disposition of 67 Defendants Rule 12(b)(1) motion to Dismiss").

[77] *Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402, 407 n.9 (4th Cir. 2011).

[78] *Id.* at 407 n.9, 411.

[79] *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 334  (4th Cir. 2014).

5. An "unusual need for unquestioning adherence to a political decision already made," and

6. The "potentiality of embarrassment from multifarious pronouncements by various departments on one question."[80]

In cases involving the civil liability of military contractors for alleged negligence, the Fourth Circuit Court of Appeals has distilled the Supreme Court's factors into two questions for determining whether a court has subject matter jurisdiction:

1. Whether "the government contractor was under the 'plenary' or 'direct' control of the military"; and

2. Whether "national defense interests were 'closely intertwined' with military decisions governing the contractor's conduct, such that a decision on the merits of the claim 'would require the judiciary to question actual, sensitive judgments made by the military.'"[81]

This test has been applied by the Fourth Circuit numerous times, beginning with *Taylor v. Kellogg Brown & Root Servs., Inc.,* and the two questions posed above have come to be known as the "*Taylor* factors."[82]  "An affirmative response to either of the two *Taylor* factors—namely, the existence of direct control or the need to question sensitive military judgments—generally triggers application of the political question doctrine."[83]

Under the *Taylor* factors, the type of "direct control" that implicates the political-question doctrine results from the military's actual control over the specific acts or omissions that form the basis of the plaintiff's claim, and not by mere formal control or general oversight by military

---

[80] *Baker v. Carr*, 369 U.S. 186, 217 (1962); *Taylor*, 658 F.3d at 408-09.

[81] *Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147, 155 (4th Cir. 2016) (citations omitted) (quoting *Taylor*, 658 F.3d at 411).

[82] *Id.* at 155; *Taylor*, 658 F.3d 402,

[83] *Al Shimari*, 840 F.3d at 155.

authorities respecting the contractor's activities.[84]  The military does not have direct control over a contractor's activities unless "the military clearly chose *how* to carry out [the contractor's activities], rather than giving the contractor discretion to determine the manner in which the contractual duties would be performed."[85]  The type of questioning, by courts, of "sensitive military judgments" that the political-question doctrine prohibits is inquiry into the reasonableness or prudence of specific military decisions—not the mere fact of military personnel's general involvement with integrated contractor operations.[86]

Neither of the *Taylor* factors are met here because:

- Fluor was not "under the 'plenary' or 'direct' control of the military"; and

- This case will not "require the judiciary to question actual, sensitive judgments made by the military."[87]

This Court, therefore, should deny Fluor's Rule 12(b)(1) motion to dismiss based on the political-question doctrine

## A.     Judge Hendricks previously determined at the Rule 12(b) stage that the political-question doctrine did not bar claims against Fluor regarding the bombing.

This Court is not writing on a blank slate in this case. Indeed, another victim of Nayeb's suicide bomb brought a separate case, which was pending before Judge Hendricks. That case is *Hencely v. Fluor*, No. 6:19-CV-00489-BHH (D.S.C.). In *Hencely*—like in this case—Fluor sought

---

[84] *Id.* at 156-57; *Burn Pit*, 744 F.3d at 337-39; *Taylor*, 658 F.3d at 411; *Norat v. Fluor Intercontinental, Inc.*, 6:14-CV-04902-BHH, 2018 WL 1382666, at *1 (D.S.C. Mar. 19, 2018).

[85] *In re KBR, Inc.*, 893 F.3d 241, 260 (4th Cir. 2018) (alteration in original) (quoting *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 534 (4th Cir. 2014)).

[86] *Al Shimari*, 840 F.3d at 158-60; *Burn Pit*, 744 F.3d at 340-41; *Taylor*, 658 F.3d at 411-12; *Norat*, 2018 WL 1382666, at *1.

[87] *Al Shimari*, 840 F.3d at 155; *Taylor*, 658 F.3d at 411.

to dismiss the plaintiff's claims for lack of subject-matter jurisdiction based on the political-question doctrine.[88] Applying the *Taylor* factors, Judge Hendricks held that the political-question doctrine did not deprive the court of jurisdiction and did not require dismissal of the plaintiff's claims.[89]

Judge Hendricks held that Fluor was not under the direct control of the military regarding the plaintiff's claims because the military did not direct Fluor to:

> (a) *So fail to supervise* the bomber that he was able to construct the bomb vest while on the job for Fluor, at Fluor's facility, using Fluor's tools and materials;
>
> (b) *So fail to supervise* the bomber that he worked alone at Fluor's facility and wandered about the Base unsupervised;
>
> (c) *So fail to supervise* the bomber that he used Fluor's tools, including a multimeter for which he had no need except to build a bomb, to construct a bomb intended to kill American servicemen and women;
>
> (d) *So fail to supervise* the bomber that he was not escorted off the [B]ase when Fluor's contractual obligations and duty to preserve Base security both required that he be escorted off the [B]ase;
>
> (e) Completely fail to ensure that Fluor's escorts remained "in close proximity and remain in constant view" of the bomber, as required by Fluor's contractual obligations and security duties;
>
> (f) *So fail to supervise* the bomber that he was able to attack the U.S. Army on November 12, 2016.[90]

---

[88] *Hencely v. Fluor Corp., Inc.*, 6:19-CV-00489-BHH, 2020 WL 2838687, at *1 (D.S.C. June 1, 2020).

[89] *Id.* at *7-15. Admittedly, however, Judge Hendricks later granted judgment on the pleadings, but on different grounds—namely, preemption and the combatant activities exception—and after discovery. *Hencely v. Fluor Corp.*, CV 6:19-00489-BHH, 2021 WL 3604781 (D.S.C. Aug. 13, 2021).

[90] *Hencely*, 2020 WL 2838687, at *8-9 (alterations in original).

13

Judge Hendricks also held that the *Hencely* case did not require the court to question the military's judgment because:

- The United States is immune from suit and as a matter of South Carolina law cannot be found to be the proximate cause of the plaintiff's injuries, so no evaluation of military decisions by the Court is required; and

- Even if the United States were not immune, as a matter of South Carolina law fault cannot be apportioned to the United States as a nonparty.[91]

Therefore, "no evaluation of the reasonableness of military decisions is required."[92]  This Court should follow a similar reasoning and likewise hold that the political-question doctrine does not deprive it of jurisdiction and bar the Plaintiff's claims in this case.

**B.    Fluor was not under the United States military's direct control.**

The Plaintiffs' allegations and the evidence show that Fluor was not under the United States military's direct control. The military did not have actual control over the specific acts or omissions that form the basis of the Plaintiffs' claims.[93]  The military did not choose how Fluor should carry out its contractual duties; instead, the military gave Fluor "discretion to determine the manner in which the contractual duties would be performed."[94]  Therefore, the first *Taylor* factor is not met.

Like the plaintiff in *Hencely*, the Plaintiffs here alleged that Fluor was negligent for:

- Failing to use ordinary care in employing, supervising, managing, and/or retaining Nayeb;

---

[91] *Id.* at *14.

[92] *Id.*

[93] *Al Shimari*, 840 F.3d at 156-57; *Burn Pit*, 744 F.3d at 337-39; *Taylor*, 658 F.3d at 411; *Norat*, 2018 WL 1382666, at *1.

[94] *In re KBR, Inc.*, 893 F.3d 241, 260 (4th Cir. 2018) (emphasis and brackets in original) (quoting *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 534 (4th Cir. 2014)).

14

- Failing to properly escort Nayeb to and from his workstation and the exit point of the Base;

- Failing to control access of their equipment and materials; and

- Negligently permitting Nayeb access to tools and equipment.[95]

The military did not have actual control over these specific acts or omissions that form the basis of the Plaintiffs' claims.[96]  Instead, these are areas where Fluor had "discretion to determine the manner in which the contractual duties would be performed."[97]

Fluor was responsible to supervise Nayeb's "day-to-day work" on the Base.[98]  So "Nayeb's work performance [was] supervised by Fluor while he was employed at the Bagram Airfield nontactical vehicle yard."[99]  Under the LOGCAP contract, it was Fluor's duty to "provide the necessary supervision for personnel required to perform this contract" and Fluor was "responsible for oversight of such personnel."[100]  There was no one in the military supervising Nayeb on the Base—instead, supervising his work "was Fluor's job."[101]  While the United States military

---

[95] Tangen ECF No. 1 at 19 (The Plaintiffs also alleged that Fluor was liable for "such other acts of negligence and gross negligence as will be shown at trial."); *Hencely*, 2020 WL 2838687, at *8-9.

[96] *Al Shimari*, 840 F.3d at 156-57; *Burn Pit*, 744 F.3d at 337-39; *Taylor*, 658 F.3d at 411; *Norat*, 2018 WL 1382666, at *1.

[97] *In re KBR, Inc.*, 893 F.3d 241, 260 (4th Cir. 2018) (quoting *Al Shimari*, 758 at 534).

[98] Ex. A at 18; *see also* Ex. A at 60.

[99] Ex. A at 57.

[100] Ex. A at 61-62; Ex. 3 to Ex. A at 5.

[101] Ex. A at 32; Ex. B at 107 (Nickles was "not aware of any military personnel supervising Nayeb while he was doing his actual work").

15

controlled the Base as a whole, "Fluor had supervision at the work area."[102]  At the time of the bombing, Nayeb "was under the direct accountability of the Fluor department supervisor."[103]

Under Fluor's contract with the military, Fluor was "responsible to provide transportation and supervision necessary for its employees to accomplish their work."[104]  Fluor employees "served as escorts for local nationals who worked in the nontactical vehicle yard."[105]  Fluor, therefore, was "responsible for supervising the transport of local nationals from the entry control point to the nontactical vehicle yard and from the nontactical vehicle yard back to the entry control point at the shift change."[106]  "Fluor was responsible for transporting Nayeb from the badging/clocking-in station to the work area and back."[107]  It was Fluor's policy that "local national employees, including Nayeb, were to be physically escorted from the work site by Fluor."[108]

Because the military did not have actual control over the specific acts or omissions that form the basis of the Plaintiffs' claims, the first *Taylor* factor is not met.

## C.    This case does not require this Court to question the military's judgment.

The second *Taylor* factor is also not met because this case does not require this Court to question the military's judgment. Under South Carolina law, the United States' actions and judgment cannot be considered when apportioning responsibility because (1) the United States has

---

[102] Ex. B at 26; Ex. 7 to Ex. A at 8 ("Fluor is responsible for all of its employees, subcontractors, and subcontractor employee actions").

[103] Ex. B at 93.

[104] Ex. A at 76.

[105] Ex. A at 78-79.

[106] Ex. A at 79.

[107] Ex. B at 111.

[108] *Id.*

16

sovereign immunity and the fault of immune parties cannot be considered, and (2) the United States is not a party and the conduct of non-parties cannot be considered. Because neither *Taylor* factor is met, this Court should deny Fluor's motion to dismiss based on the political-question doctrine.

### 1.    South Carolina law—not Afghanistan law—applies.

Fluor argues that under South Carolina's choice-of-law rules, Afghanistan law—not South Carolina law—applies to the Plaintiffs' claims.[109]

South Carolina applies the lex loci delicti rule when determining choice of law in tort cases.[110]    Under lex loci delicti, the law of the state in which the injury occurred is used.[111] However, South Carolina courts also apply a "public policy exception to lex loci deliciti."[112] Under the public policy exception, a South Carolina court "will not apply foreign law if it violates the public policy of South Carolina" or if it "is against good morals or natural justice."[113]  Applying Taliban Sharia law violates the public policy of South Carolina and is against good morals and natural justice.

Fluor claims that under Afghanistan law, the fault of immune entities and non-parties can be considered.[114]  Fluor, therefore, contends that when Afghanistan law is applied, the military's

---

[109] ECF No. 67-1 at 32-36.

[110] *Boone v. Boone*, 546 S.E.2d 191, 193 (S.C. 2001).

[111] *Id*. at 193.

[112] *Nash v. Tindall Corp*., 650 S.E.2d 81, 83 (S.C. Ct. App. 2007).

[113] *Boone*, 546 S.E.2d at 193.

[114] ECF No. 67-1 at 35-36.

17

conduct and judgment will have to be considered, meaning that the Plaintiffs' claims are barred by the political-question doctrine.[115]

This Court should reject Fluor's argument that Afghanistan law applies and that it would allow the United States military's fault to be considered. As an initial matter, Fluor has not established that Afghanistan law applies to torts committed at the United States Air Force base at Bagram. Even if Afghanistan law applied, Fluor did not carry its burden to establish that Afghanistan law would allow the fault of immune entities and non-parties to be considered because it relies on law from the former Afghanistan government, not the new Taliban government. Finally, even if Afghanistan law would otherwise apply, doing so here would violate South Carolina public policy because Afghanistan now uses Sharia law as interpreted by the Taliban.

> **a.     Fluor has not established that Afghanistan law applies to torts committed at the United States military base at Bagram.**

Fluor argues that Afghanistan law should apply even though the bombing took place on a United States military base.[116]  Fluor bases its argument on a provision of the Security and Defense Cooperation Agreement entered into by the United States and Afghanistan.[117]  Fluor argues that because the Base remained the property of Afghanistan, the agreement provides that Afghanistan law applies to torts committed there.[118]

---

[115] ECF No. 67-1 at 36.

[116] ECF No. 67-7 at n.19.

[117] *Id*.; Security and Defense Cooperation Agreement, at 23, annex A (available at https:/www.state.gov/15-101/) .

[118] ECF No. 67-7 at n.19.

18

But the agreement does not provide that Afghanistan law applies. Instead, it provides that Americans would be covered by United States law and that—at most—Afghanistan law would be given "due respect."[119]  The agreement also provides that "United States forces are bound by the laws and regulations of the United States . . . ."[120]  The agreement makes clear that any "claims arising out of acts or omissions of members of the force and of the civilian component . . . shall be expeditiously processed and settled . . . in accordance with the laws and regulations of the United States," although "the laws, customs, and traditions of Afghanistan" would be "seriously consider[ed]."[121]  The United States military, therefore, contemplated that claims against government contractors for injuries on United States military bases in Afghanistan would be governed by United States law.

Fluor also argues that the United States Supreme Court and other federal courts have "held that application of a *lex loci* rule to overseas military bases would result in the application of the foreign country's law."[122]  But the cases Fluor relies on do not support that argument. Those cases did not involve choice of law or the lex loci rule.[123]  Instead, they addressed whether an injury on a United States military base in a foreign country is considered to have taken place in a foreign

---

[119] Security and Defense Cooperation Agreement, at 9 ("United States forces operations and activities on agreed facilities shall be conducted . . . with due respect for applicable Afghan laws and regulations, and in accordance with applicable United States laws and regulations . . . .").

[120] *Id*. at 12.

[121] *Id*. at 20.

[122] ECF No. 67-7 at n.19 (citing *United States v. Spelar*, 338 U.S. 217, 219-21 (1949); *Burna v. United States*, 240 F.2d 720, 721-23 (4th Cir. 1957); *Cobb v. United States*, 191 F.2d 604, 609-11 (9th Cir. 1951); *Al-Zahrahni v. Rumsfeld*, 684 F. Supp.2d 103, 116–19 (D.D.C. 2010); *Meredith v. United States*, 330 F.2d 9, 10 (9th Cir. 1964)).

[123] None of the cases Fluor relies on use the terms "choice of law" or "lex loci."

19

country under the Federal Tort Claims Act. That statute prohibits claims against the United States for injuries that took place in foreign countries, so the analyses in those cases have nothing to do with the choice-of-law question before this Court.[124]

This Court, therefore, should reject Fluor's claim that Afghanistan law applies to the Plaintiffs' claims related to a suicide bombing at a United States military base. Instead, South Carolina law should apply.

### b.     Fluor's evidence of Afghanistan law is insufficient because it applies the law of the prior Afghanistan government, not the new Taliban government that took control in August 2021.

Fluor has not established that Afghanistan law would allow the military's conduct to be considered when apportioning fault. That is because Fluor has provided no evidence regarding current Afghanistan law; instead, it has provided evidence regarding the prior Afghanistan law before the Taliban took over in August 2021.

Fluor relies on the declaration of Mehdi Hakimi, who it contends is an expert on Afghanistan law.[125] The main problem with Hakimi's testimony is that it concerns the law of a country that no longer exists. Since Hakimi provided his declaration in July, Afghanistan's government has fallen and the Taliban have replaced it. The Islamic Republic of Afghanistan has

---

[124] 28 U.S.C. § 2680(k) (providing that the Federal Tort Claims Act does not apply to "[a]ny claim arising in a foreign country").

[125] ECF No. 67-7.

been replaced by the Islamic Emirate of Afghanistan.[126]  The prior law of Afghanistan no longer applies; instead, the country is now governed by Sharia law, as interpreted by the Taliban.[127]

Afghanistan no longer operates under the constitution that Hakimi claims it does. Hakimi's opinion contends that Afghanistan follows the 2004 Afghan Constitution.[128]  That is no longer true. Instead, the Taliban has indicated that the 1964 Afghan Constitution now applies.[129]

Because Hakimi's opinion regarding Afghanistan law applies to the prior law of a now non-existent country, it is no evidence of how current Afghanistan law under the Taliban and Sharia would address the issue of proportionate responsibility.

---

[126] https://www.pri.org/stories/2021-09-10/taliban-s-islamic-emirate-afghanistan-based-specific-ideology; https://apnews.com/article/afghanistan-taliban-kabul-bagram-e1ed33fe0c665ee67ba132c51b8e32a5;
https://en.wikipedia.org/wiki/Islamic_Republic_of_Afghanistan.

[127] https://www.washingtonpost.com/world/2021/08/19/sharia-law-afghanistan-taliban/;
https://www.aljazeera.com/news/2021/8/23/hold-the-taliban-and-sharia-law-in-afghanistan;
https://www.hindustantimes.com/world-news/men-and-women-cannot-work-together-taliban-say-sharia-law-doesn-t-allow-it-101631554700173.html; https://www.voanews.com/a/south-central-asia_what-shariah/6209938.html. This Court can take judicial notice of the fact that the Taliban have taken control of Afghanistan, set up the Islamic Emirate of Afghanistan, and established Sharia law as Afghanistan's new law. FED. R. EVID. 201

[128] ECF No. 67-7 at 4.

[129] https://www.constituteproject.org/constitution/Afghanistan_2004.pdf?lang=en;
https://www.voanews.com/a/taliban-say-they-will-use-parts-of-monarchy-constitution-to-run-afghanistan-for-now/6248880.html; https://www.aa.com.tr/en/asia-pacific/taliban-to-implement-monarch-era-constitution-in-afghanistan/2377376; https://www.justsecurity.org/78051/between-legitimacy-and-control-the-talibans-pursuit-of-governmental-status/;
https://www.hindustantimes.com/world-news/what-is-there-in-1964-s-monarchy-constitution-that-taliban-plan-to-adopt-101632934277381.html.

      **c.**      **Even if Fluor had provided evidence of current Afghanistan law, applying it here would violate South Carolina public policy because Afghanistan uses Sharia law as interpreted by the Taliban.**

This Court should not apply the Taliban's Sharia law to the Plaintiffs' claims. Under the public policy exception, a South Carolina court "will not apply foreign law if it violates the public policy of South Carolina" or if it "is against good morals or natural justice."[130]  Applying Taliban Sharia law violates the public policy of South Carolina and is against good morals or natural justice.

As an initial matter, Sharia law is religious law and the First Amendment to the United States Constitution prohibits courts from applying religious law.[131]  This Court, therefore, should not apply Sharia law to the Plaintiffs' claims.

Even if this Court could constitutionally apply Sharia law, it should not do so here because the Taliban's Sharia law violates the public policy of South Carolina and is against good morals or natural justice. The Taliban's interpretation of Sharia law provides limited protection for women. Recent reports show that Afghanistan's women judges and lawyers are now in hiding, being hunted by the men whose cases they oversaw and prosecuted.[132]  Many of the Plaintiffs are women. They will not receive equal protection if this Court is required to apply the Taliban's Sharia law.

---

[130] *Boone*, 546 S.E.2d at 193.

[131] *Dixon v. Edwards*, 290 F.3d 699, 714 (4th Cir. 2002) ("Pursuant to the First Amendment, 'civil courts lack any authority to resolve disputes arising under religious law….'") (citing *Serbian E. Orthodox Diocese for the United States & Canada v. Milivojevich*, 426 U.S. 696, 709 (1976)).

[132] https://www.bbc.com/news/world-asia-58709353; https://www.bbc.com/news/world-asia-58742581.

The Taliban's interpretation of Sharia law imposes barbaric punishments, including cutting off a hand of convicted thieves and cutting off a hand and foot of convicted highway robbers.[133] A Taliban court ordered a woman whipped 40 times for talking to a man on the phone.[134]  It is against good morals and natural justice to apply that legal system to the Plaintiffs' claims.

Therefore, applying the Taliban's Sharia law to the Plaintiffs' claims in this case violates the public policy of South Carolina and is against good morals or natural justice. Accordingly, South Carolina law—not Afghanistan law—applies.

### 2. Under South Carolina law the United States military's conduct and judgment cannot be considered when apportioning responsibility.

As the *Hencely* court held, South Carolina law does not allow the jury to find that the conduct of an immune entity or a non-party was the proximate cause of the plaintiff's harm.[135] Because the United States has sovereign immunity and is not a party to this case, as a matter of South Carolina law fault cannot be apportioned to the United States or the United States military.[136] Therefore, no evaluation of the reasonableness of military decisions is required.

Fluor does not dispute that the United States military's conduct and judgment cannot be considered under South Carolina law. Instead, Fluor bases its argument on its claim that

---

[133] https://apnews.com/article/religion-afghanistan-kabul-taliban-22f5107f1dbd19c8605b5b5435a9de54.

[134] https://observers.france24.com/en/asia-pacific/20210426-taliban-tribunal-gives-woman-40-lashes-for-talking-to-a-man-on-the-phone.

[135] *Hencely*, 2020 WL 2838687, at *8-9; S.C. CODE ANN. § 15-38-15; *Machin v. Carus Corp.*, 799 S.E.2d 468, 476-77 (S.C. 2017). For this same reason, Fluor's separation-of-powers argument also fails. *See* § II(D) below; ECF No. 67-1 at 36–40.

[136] *Hencely*, 2020 WL 2838687, at *8-9; S.C. Code Ann. § 15-38-15; *Machin*, 799 S.E.2d at 476–77.

23

Afghanistan law—not South Carolina law—applies.[137]  Because South Carolina law applies, the

second *Taylor* factor is not met. This Court, therefore, should deny Fluor's motion to dismiss based

on the political-question doctrine.

**D.     The separation-of-powers doctrine does not deprive this Court of jurisdiction.**

Fluor contends that the separation-of-powers doctrine deprives this Court of jurisdiction.[138]

Fluor bases its argument primarily on cases filed against the government.[139]  While separation-of-

powers issues might arise in claims against the government, they are not present here in this lawsuit

against private corporations.[140]

Fluor argues that the separation-of-powers doctrine bars this lawsuit because this Court

cannot second-guess military orders.[141] This is just a rehash of Fluor's political-question argument.

As explained above, this Court will not be required to second-guess military orders because the

military's conduct is not at issue in this lawsuit.[142]

This Court should reject Fluor's separation-of-powers claim.

---

[137] ECF No. 67-1 at 31-36.

[138] ECF No. 67-1 at 36-40.

[139] The only case not against the government is *Tozer v. LTV Corp.*, 792 F.2d 403, 405-06 (4th Cir. 1986). That cases mentioned separation of powers only once and in passing, so it does not support Fluor's broad argument.

[140] *Riegle v. Fed. Open Mkt. Comm.*, 656 F.2d 873, 881 (D.C. Cir. 1981) disapproved of on other grounds by *Melcher v. Fed. Open Mkt. Comm.*, 836 F.2d 561 (D.C. Cir. 1987) ("a private plaintiff's suit would not raise separation-of-powers concerns"); *Pickens v. Mgmt. & Training Corp.*, 316CV00913CWRFKB, 2017 WL 5559847, at *4 n.37 (S.D. Miss. Nov. 17, 2017) ("employment at a private prison *cannot* implicate the separation of powers doctrine because private prisons are private commercial companies") (emphasis in original; internal quotation omitted).

[141] ECF No. 67-1 at 38.

[142] *See* § II(C) above.

### III.    This Court should deny Fluor's Rule 12(b)(1)
### Motion to Dismiss for Lack of Subject-Matter Jurisdiction
### Based on the South Carolina Door Closing Statute

Fluor seeks to dismiss the Plaintiffs' claims for lack of subject-matter jurisdiction based on the South Carolina Door Closing Statute.[143]  The Door Closing Statute bars lawsuits against non-South Carolina corporations when the plaintiff is not a South Carolina resident, and the cause of action did not arise within South Carolina.[144]

This Court should deny Fluor's motion because the Door Closing Statute is not jurisdictional, so it does not support a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. Even if a Rule 12(b)(1) motion were theoretically proper, it should be denied here for two independent reasons:

1.  The Door Closing Statute does not apply because the contract at issue in the case was centrally administered out of Fluor's South Carolina office; and

2.  Fluor has not established that the Plaintiffs could obtain full relief in any state other than South Carolina.

**A.    The South Carolina Door Closing Statute is not jurisdictional, so it is not proper for a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.**

This Court should deny Fluor's Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction based on the South Carolina Door Closing Statute because that statute

---

[143] S.C. CODE ANN. § 15-5-150.

[144] *Id*. ("An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court: (1) By any resident of this State for any cause of action; or (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.").

25

addresses a plaintiff's capacity to sue, not the court's subject-matter jurisdiction.[145] Rule 12(b)(1), therefore, is not the appropriate method to raise a challenge based on the Door Closing Statute.

The South Carolina Supreme Court has held that the Door Closing Statute "does not affect subject matter jurisdiction."[146] Instead, the statute addresses the plaintiff's capacity to sue.[147]

Rule 12(b)(1) motions are limited to challenges based on "lack of subject-matter jurisdiction."[148] A challenge to the plaintiff's capacity to sue is not a challenge to the district court's subject-matter jurisdiction, so it cannot be brought under Rule 12(b)(1). Instead, a challenge to the plaintiff's capacity to sue is brought under Rule 12(b)(6).[149]

---

[145] *Farmer v. Monsanto Corp*., 579 S.E.2d 325, 328 (S.C. 2003) (finding that "§ 15–5–150 does not affect subject matter jurisdiction").

[146] *Id*.

[147] *Id*. at 327 (finding that "§ 15–5–150 does not involve subject matter jurisdiction but rather determines the capacity of a party to sue").

[148] FED. R. CIV. P. 12(b)(1).

[149] *Doe v. McKesson*, 945 F.3d 818, 824 (5th Cir. 2019), *cert. granted, judgment vacated on other grounds*, 141 S. Ct. 48 (2020) (stating that a "motion[] arguing lack of capacity" is "treated . . . as a Rule 12(b)(6) motion"); *Klebanow v. New York Produce Exch*., 344 F.2d 294, 296 (2d Cir. 1965); *Alley v. Yadkin County Sheriff Dep't*, 1:16CV100, 2017 WL 5635946, at *1 (M.D.N.C. Jan. 27, 2017) ("The defense of lack of capacity to be sued is properly brought before the Court on a motion to dismiss under Rule 12(b)(6) for failure to state a claim."); *Walker v. Harmon*, CV 15-5037-JLV, 2016 WL 4083726, at *1 (D.S.D. Aug. 1, 2016) (holding that an "argument that it is not an entity capable of being sued is not the proper basis for a Rule 12(b)(1) motion to dismiss"); *see also* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1294 (3d ed. 2018) ("An effective denial of capacity ... creates an issue of fact. Such a denial may be made in the responsive pleading or, if the lack of capacity ... appears on the face of the pleadings or is discernible there from, the issue can be raised by a motion to dismiss for failure to state a claim for relief." (footnotes omitted)). Courts in this district have addressed the South Carolina Door Closing Statute under Rule 12(b)(1), but it does not appear that the plaintiffs in those cases objected to Rule 12(b)(1) being used. *See, e.g.*, *Fung Lin Wah Enters. Ltd. v. E. Bay Imp. Co*., 465 F. Supp. 2d 536, 542 (D.S.C. 2006).

Fluor argues that it is irrelevant whether this Court addresses the Door Closing Statute under Rule 12(b)(1) or Rule 12(b)(6).[150] But there are major differences between Rule 12(b)(1) and Rule 12(b)(6) motions:

- Under a Rule 12(b)(1) motion, the Plaintiffs have the burden of proof because they are the party that invoked federal jurisdiction.[151] But under a Rule 12(b)(6) motion, Fluor would have the burden of proof.[152]

- Additionally, a Rule 12(b)(1) motion allows the parties to introduce evidence, while a Rule 12(b)(6) motion cannot include evidence without converting it into a Rule 56 summary-judgment motion.[153]

- Finally, in a Rule 12(b)(1) motion, the court "weighs the evidence to determine its jurisdiction," while in a Rule 12(b)(6) motion or a Rule 56 summary-judgment motion, the court cannot weigh the evidence.[154]

---

[150] FED. R. CIV. P. 12(b)(6); ECF No. 67-7 at 23 n.11 ("[W]hether the Door Closing issue is properly addressed under Rule 12(b)(1) or some other standard is immaterial, as the facts relevant to the issue are plainly not in dispute.").

[151] *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction.").

[152] *Genetic Techs. Ltd. v. Glaxosmithkline, LLC*, 1:12-CV-299, 2014 WL 12160649, at *1 (M.D.N.C. Aug. 22, 2014) ("Upon the filing of a Rule 12(b)(6) motion, the burden is on the moving party to prove that no legally cognizable claim for relief exists."); *McKenzie v. E.E.O.C.*, 749 F. Supp. 115, 116 (W.D.N.C. 1990) ("In bringing a Rule 12(b)(6) motion, the movant carries the burden of proof to show that the plaintiff has failed to state a claim upon which relief can be granted.").

[153] *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (holding that in "a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction . . . the district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment") (internal quotation omitted); FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *Strickland v. Turner*, 9:15-CV-275-PMD-BM, 2016 WL 1570166, at *2 (D.S.C. Apr. 19, 2016) ("When a defendant uses evidence outside the pleadings to support a motion to dismiss under Rule 12(b)(6), the court cannot consider that evidence without converting the motion into one for summary judgment . . . .").

[154] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (noting that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"); *Adams*, 697 F.2d at 1219

This Court, therefore, should deny Fluor's Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction based on the Door Closing Statute because that rule is limited to challenges to a court's subject-matter jurisdiction and the statute does not involve this Court's subject-matter jurisdiction.

**B. This Court should deny Fluor's Rule 12(b)(1) Motion to Dismiss Based on the South Carolina Door Closing Statute even if the statute were jurisdictional.**

Even if Rule 12(b)(1) were the proper method for Fluor to raise the South Carolina Door Closing Statute, this Court should still deny Fluor's motion to dismiss based on the statute for two independent reasons:

- The Door Closing Statute does not apply because the contract at issue in the case was centrally administered out of Fluor's South Carolina office; and

- Fluor has not established that the Plaintiffs could obtain full relief in any state other than South Carolina.

The Door Closing Statute "prevents a nonresident of South Carolina from bringing suit against a foreign corporation in the state courts of South Carolina unless the cause of action arises in the state or the subject of the action is situated in the state."[155]  A South Carolina federal court exercising diversity jurisdiction must apply the Door Closing Statute "unless there are affirmative

---

("Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction."); *GE Power Elecs., Inc. v. Cornell-Dubilier Elecs., Inc*., CV 8:16-708-MGL, 2016 WL 5815837, at *1 (D.S.C. Oct. 5, 2016) (stating that the "court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient") (internal quotation omitted).

[155] *Smith v. Mack Trucks, Inc*., 991 F.2d 791 (Table), at *1 (4th Cir. 1993); *Hencely v. Fluor Corp., Inc*., 475 F. Supp. 3d 464, 466 (D.S.C. 2020), reconsideration denied sub nom. *Hencely v. Fluor Corp*., 6:19-CV-00489-BHH, 2020 WL 5269795 (D.S.C. Sept. 4, 2020).

countervailing federal considerations."[156]  The Fourth Circuit has recognized three countervailing federal considerations:

1. The purpose in the grant of diversity jurisdiction of avoiding discrimination against nonresidents;

2. The policy of encouraging a state to enforce the laws of its sister states; and

3. The fact that South Carolina is the only state in the country in which the plaintiff could be joined.[157]

The Fourth Circuit has held that the third consideration is "the most crucial."[158]  The Fourth Circuit has held that the third consideration is met when there is no other state where the plaintiff "could gain full relief."[159]

Fluor raised the Door Closing Statute in *Hencely*.[160]  In *Hencely*—like in this case—Fluor argued that "the South Carolina Door Closing Statute, S.C. Code Ann. § 15-5-150, bars this action because Plaintiff is not a South Carolina resident, Defendants are all foreign corporations, and all of Plaintiff's causes of action arise out of alleged acts that occurred in Afghanistan."[161]  In *Hencely*, Judge Hendricks rejected Fluor's argument that the Door Closing Statute barred the plaintiff's claims.[162] She based her ruling on two independent grounds:

---

[156] *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 740 (4th Cir. 1980) (quoting *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60 (4th Cir. 1965)).

[157] *Rollins*, 634 F.2d at 740; *see also Szantay*, 349 F.2d at 65–66.

[158] *Rollins*, 634 F.2d at 740.

[159] *Bumgarder v. Keene Corp.*, 593 F.2d 572, 573 (4th Cir. 1979).

[160] *Hencely*, 475 F. Supp. 3d at 466.

[161] *Id*.

[162] *Id*. at 467.

- First, the contract that formed the basis of the *Hencely* plaintiff's breach of contract claim and serves as the source of various duties that Fluor is alleged to have breached in the plaintiff's other claims, was centrally administered from Fluor's corporate offices in Greenville, South Carolina.

- Second, even if it were true that the Door Closing Statute operated to bar the *Hencely* plaintiff's lawsuit, South Carolina may well be the only forum where the plaintiff's claims can be heard and where he can obtain "full relief," thus providing a countervailing federal interest to dismissal.[163]

This Court should deny Fluor's motion to dismiss the Plaintiffs' claims for the same reasons.

### 1.    The South Carolina Door Closing Statute does not apply because the contract at issue in the case was administered out of Fluor's South Carolina office.

The South Carolina Door Closing Statute does not apply to claims by non-South Carolina residents against non-South Carolina corporations when the cause of action arises within South Carolina.[164]  "When a contract is involved, the question for purposes of the door-closing statute is whether the contract was made or was to be performed in South Carolina."[165]

The contract at issue in this case is the Logistics Civil Augmentation Program contract awarded to Fluor in April 2008.[166]  It is known as LOGCAP IV.[167]  That is the same contract at

---

[163] *Id*. at 467-68.

[164] S.C. CODE ANN. § 15-5-150; *Smith*, 991 F.2d 791 (Table), at *1 ("Section 15–5–150, commonly referred to as a door-closing statute, prevents a nonresident of South Carolina from bringing suit against a foreign corporation in the state courts of South Carolina *unless the cause of action arises in the state* or the subject of the action is situated in the state.") (emphasis added).

[165] *Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc*., 463 F. Supp. 2d 544, 551 (D.S.C. 2006); *Snell v. Golden Rule Ins. Co.*, No. 6:08-3555-MHM, 2009 WL 185723, at *2 (D.S.C. Jan. 23, 2009) (same).

[166] Tangen ECF No. 1 at 8.

[167] *Id*.

issue in *Hencely*.[168]   Like in *Hencely*, LOGCAP IV is the contract that forms the basis of the

Plaintiffs' breach-of-contract claim and serves as the source of various duties that Fluor is alleged

to have breached in Plaintiffs' other claims.[169]

In *Hencely*, Judge Hendricks determined that LOGCAP IV "was centrally administered

from Fluor's corporate offices in Greenville, South Carolina."[170]   Fluor has provided a sworn

declaration that its Greenville, South Carolina office is its "principal place of business" and its

"U.S. base of operations" for activities related to the LOGCAP IV contract.[171]

Because "the contract at issue 'was to be performed in South Carolina'—at least in

substantial part—the statute does not apply to bar jurisdiction."[172]   This Court, therefore, should

deny Fluor's motion to dismiss based on the Door Closing Statute.

### 2.    Fluor has not established that the Plaintiffs could obtain full relief in any state other than South Carolina.

The Fourth Circuit has held that the third consideration is met when there is no other state

where the plaintiff "could gain full relief."[173]   Judge Hendricks explained in *Hencely* that for a

---

[168] *Hencely*, 475 F. Supp. 3d at 467.

[169] Tangen ECF No. 1 at 10-22.

[170] *Hencely*, 475 F. Supp. 3d at 467; *see also* ECF No. 1 at 6.

[171] Declaration of Thomas Flores ¶¶ 2, 20, attached as Ex. C. Fluor provided that declaration to a California state court to successfully argue that the "California court that it should dismiss a case arising out of LOGCAP IV activities based on a *forum non conveniens* theory, because the contract was administered out of Fluor's office in Greenville, because that is where Fluor trained its personnel prior to deployment to Afghanistan, and because the bulk of Fluor's relevant witnesses would be located in South Carolina." *Hencely*, 475 F. Supp. 3d at 468 (referencing *Int'l Sec. & Def. Mgmt., LLC v. Fluor Intercontinental, Inc.*, No. B243384, 2013 WL 4761107 (Cal. Ct. App. Sept. 5, 2013)).

[172] *Hencely*, 475 F. Supp. 3d at 467 (quoting *Snell*, 2009 WL 185723, at *2).

[173] *Bumgarder*, 593 F.2d at 573.

state to offer plaintiffs "full relief," the plaintiffs must be able to bring their claims in that state without having the "refiled suit rejected on a forum non conveniens theory or for lack of subject matter jurisdiction."[174]  Fluor has not established that the Plaintiffs could obtain full relief in any other state.

Fluor makes the conclusory allegation that the Plaintiffs could sue in "numerous other forums," specifically identifying Texas, California, Illinois, North Carolina, and Delaware.[175] Fluor does not explain why the Plaintiffs' claims in those forums would not be dismissed for lack of subject-matter jurisdiction based on the political-question doctrine, forum non conveniens, or for lack of personal jurisdiction.[176]

The Plaintiffs cannot obtain full relief in Texas because, based on the political-question doctrine, Texas state and federal courts do not have subject-matter jurisdiction over their claims. The Texas federal district court held that it had no subject-matter jurisdiction over the case under Texas law because of the political-question doctrine.[177]  As explained above, the political-question doctrine does not apply here because under South Carolina law, the responsibility of immune entities, such as the United States and the United States military, cannot be considered.[178]

---

[174] *Hencely*, 2020 WL 5269795, at *3. Fluor claims that Judge Hendricks created "a novel 'full relief' requirement." ECF No. 67-1 at 44. Fluor is incorrect, because the Fourth Circuit adopted the "full relief" requirement in *Bumgarder v. Keene Corp.*, 593 F.2d 572, 573 (4th Cir. 1979). Fluor does not even cite to *Bumgarder*. ECF No. 67-1 at 6-9, 40-44.

[175] ECF No. 67-1 at 43.

[176] *Id*.

[177] *Loquasto v. Fluor Corp., Inc.*, 512 F. Supp. 3d 728, 731 (N.D. Tex. 2021).

[178] *See* § II above; *see also Hencely v. Fluor Corp., Inc.*, 6:19-CV-00489-BHH, 2020 WL 2838687, at *14 (D.S.C. June 1, 2020)

The Plaintiffs cannot obtain full relief in California based on the political-question doctrine because—like Texas—California allows fault to be apportioned regarding statutorily immune parties.[179]

Illinois, North Carolina, and Delaware do not allow an immune entity's fault to be apportioned.[180]  But that does not mean that the Plaintiffs could obtain full relief in those states. Only one plaintiff is a resident of Illinois and only one plaintiff if a resident of North Carolina, so there is no basis for the other eleven plaintiffs to file in either of those states.[181]  Additionally, Fluor has not shown that the Plaintiffs' claims would not be dismissed based on forum non conveniens if filed in Illinois, North Carolina, or Delaware, because those states have no relation to the Plaintiffs' claims.[182]  Similarly, Fluor has not shown that it would be subject to personal jurisdiction in those states if sued there.[183]

Fluor has not shown why the Plaintiffs' claims in those forums would not be dismissed for lack of subject-matter jurisdiction based on the political-question doctrine, forum non conveniens,

---

[179] *Hencely*, 475 F. Supp. 3d at 469; *DaFonte v. Up-Right, Inc*., 828 P.2d 140, 145 (Cal. 1992) ("The statute neither states nor implies an exception for damages attributable to the fault of persons who are immune from liability or have no mutual joint obligation to pay missing shares. On the contrary, [the statute] expressly affords relief to every tortfeasor who is a liable 'defendant,' and who formerly would have had full joint liability.").

[180] *Wood v. Navistar, Inc*., No. 130960-U, ¶ 26, 2014 WL 28885448 (2014 IL App (1st)); *Kotowski v. A. C. & S. Co*., No. CIV. A. 86C-JN-50, 1990 WL 81859, at *2 (Del. Super. Ct. June 6, 1990); *Hencely*, 475 F. Supp. 3d at 469; *Draughon v. Evening Star Holiness Church of Dunn*, 843 S.E.2d 72, 76 (N.C. 2020) (North Carolina uses contributory negligence—not comparative negligence—so fault is not apportioned).

[181] ECF No. 67-1 at 43.

[182] *See Hencely*, 475 F. Supp. 3d at 467.

[183] *Id*.  Defendant Fluor Government Group International, Inc. is incorporated in Delaware, but Defendant Fluor Intercontinental is incorporated in California. ECF No. 67-1 at 43.

33

or for lack of personal jurisdiction.[184]  This Court, therefore, should deny Fluor's motion to dismiss based on the Door Closing Statute.

### IV.     Conclusion

This Court should deny Fluor's Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction Based on the Political-Question Doctrine and the South Carolina Door Closing Statute.

*Signatures on following page.*

---

[184] ECF No. 67-1 at 43.

Respectfully submitted,

*/s/ John B. White, Jr.*
John B. White, Jr. (Fed. ID No. 04619)
Griffin L. Lynch (Fed. ID No. 09580)
Marghretta H. Shisko (Fed. ID No. 11601)
HARRISON WHITE, P.C.
178 West Main
Street P.O. Box 3547 (29304)
Spartanburg, SC 29306
(864) 585-5100
jwhite@spartanlaw.com
glynch@spartanlaw.com
mshisko@spartanlaw.com


Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
THE BUZBEE LAW FIRM
JPMorgan Chase Tower
600 Travis, Ste. 7300
Houston, Texas 77002
Telephone:  (713) 223-5393
Fax: (713) 223-5909
*Admitted Pro Hac Vice*


David George
Texas Bar No. 00793212
BAKER • WOTRING LLP
700 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
Telephone: (713) 980-1700
Facsimile: (713) 980-1701
dgeorge@bakerwotring.com
*Pro Hac Vice Motion Forthcoming*

ATTORNEYS FOR PLAINTIFFS

35