# Exhibit C

*Declaration of Thomas Flores, March 7, 2012*

Kurt C. Peterson (SBN 83941)
Email: kpeterson@reedsmith.com
Stuart A. Shanus (SBN 188046)
Email: sshanus@reedsmith.com
Francisca M. Mok (SBN 206063)
Email: fmok@reedsmith.com
REED SMITH LLP
1901 Avenue of the Stars, Suite 700
Los Angeles, CA 90067-6078
Telephone:     +1 310 734 5200
Facsimile:     +1 310 734 5299

Attorneys for Defendant
FLUOR INTERCONTINENTAL, INC.

FILED
SUPERIOR COURT OF CALIFORN:
COUNTY OF LOS ANGELES

MAR 7 - 2012

John A. Clarke, Executive Officer/Cler
BY _____ , Deputy
Mary Flores

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

CENTRAL DISTRICT

| | |
|---|---|
| INTERNATIONAL SECURITY & DEFENSE MANAGEMENT, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>FLUOR INTERCONTINENTAL, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. BC 477145<br><br>**DECLARATION OF THOMAS FLORES IN SUPPORT OF FLUOR INTERCONTINENTAL, INC.'S MOTION TO DISMISS OR STAY ACTION FOR** *FORUM NON CONVENIENS*<br><br>Date:    May 8, 2012<br>Time:    8:30 a.m.<br>Place:    Dept. 62<br><br>Compl. Filed: January 17, 2012<br>Trial Date:<br><br>Honorable Michael L. Stern, Dept. 62 |

– 1 –

I, Tom Flores, declare that:

1.      I am the Executive Director of Corporate Security for Fluor Corporation and have held that position since November 11, 1999. Prior to joining Fluor Corporation, I was in the United States Army for 24 years and reached the rank of Colonel. In my current role, my duties and responsibilities include managing a team of about thirty employees as part of a larger organization to provide security services for Fluor Corporation and its customers (including the United States government) throughout the world. In that role, I am the most senior person in the reporting chain regarding the security portion of Fluor Intercontinenal, Inc.'s performance of its Logistics Civil Augmentation Program ("LOGCAP") work for the U.S. Government. I receive regular reports regarding corporate security's performance of LOGCAP. I have personal knowledge of the matters stated in this Declaration and if called as a witness, I could and would competently testify to them.

2.      Fluor Government Group ("FGG") is the umbrella business unit for Fluor Corporation which is responsible for Fluor Corporation's business with the United States Government, specifically including the LOGCAP work. FGG's principal place of operations is in Greenville, South Carolina. Within the unincorporated FGG business unit, a number of different business entities, joint ventures and other legal entities are managed and operate. One of the Fluor Corporation legal entities which contracts with various agencies of, units of, and organizations within the United States is the defendant in this action, Fluor Intercontinental, Inc. Fluor Intercontinental, Inc.'s principal place of business is Greenville, South Carolina. Neither Fluor Intercontinental, Inc. nor FGG have a place of business (*i.e.*, office) in California.

3.      In July 2009, in connection with its decision to materially increase the number of combat troops in Afghanistan (commonly referred to as the "Surge") the United States government after a competitive bidding process, issued Task Order IV under LOGCAP  to provide construction

– 2 –

Declaration of Thomas Flores in Support of Fluor Intercontinental, Inc.'s Motion to Dismiss or
Stay Action For *Forum Non Conveniens*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

services, power, water, housing, base operations, sustainment services and logistics support. Fluor was one of three companies that were awarded contracts under Task Order IV.[1]

4.      With respect to security services to be provided under Task Order IV, the Company initially determined that the most effective means to provide those services was to utilize multiple, qualified subcontractors to provide trained, qualified personnel who would be managed by Fluor employees. In order to become a winning bidder to provide such services, a subcontractor had to: 1) demonstrate it was qualified to provide the requested security services; 2) submit a bid that the Company determined to be acceptable; and 3) ultimately provide the most appropriate cost for services as an acceptable bidder. These determinations were the responsibility of two different parts of the Company. The Corporate Security group was tasked with determining if the potential bidder was "qualified" to serve as a subcontractor for LOGCAP. If it was determined that the bidder was qualified, then the subcontracts portion of FGG's Acquisitions Group ("Contracts"), the group responsible for entering into formal contracts, would determine which of the qualified bidders would be awarded a contract based on aspects other than technical qualifications.

5.      The United States government included a number of "option years" in Task Order IV. Part of Fluor's approach to subcontractor bidding as set forth in its Task Order IV Requests for Proposal ("RFPs") was that subcontractors would propose option years – additional years for which subcontracts could be extended – but Fluor had no obligation to exercise them.

6.      I have known James ("Jim") Earl for 10 years. He previously did work for Fluor's Corporate Security Group. After participating in security efforts in Iraq and post-Katrina New Orleans, Jim Earl resigned from Fluor in order to found International Security & Defense Management ("ISDM")

---

[1] This was the fourth award granted to Fluor under the LOGCAP IV program. Previously, Fluor was awarded work under LOGCAP IV which included: Task Order 2 to expand and operate four forward operating bases in Northern Afghanistan; Task Order 3 to provide measurement and testing services in Kuwait; and Task Order 4 to build and operate eight additional forward operating bases in Afghanistan.

Declaration of Thomas Flores in Support of Fluor Intercontinental, Inc.'s Motion to Dismiss or Stay Action For *Forum Non Conveniens*

with his brother Jeff Earl. I had numerous conversations with Jim Earl during which he told me that ISDM was interested in providing qualified security personnel to Fluor Corporate Security for both government and non-government commercial work. Given my approximately 10 year professional relationship with Jim Earl, I wanted to give his company ISDM an opportunity to become a qualified supplier of security personnel to Fluor.

7. Jim Earl had relationships in the community of retired and former military personnel and thus was able to recruit highly qualified individuals to ISDM. In order to facilitate using ISDM as a subcontractor on Fluor commercial projects, I facilitated ISDM entering into an "Alliance Agreement" with TRS Staffing Solutions, Inc., a sister company of Fluor, to provide work for commercial (non-government) security projects. An "Alliance Agreement" is a select business relationship which is reserved for those business entities that have established close working relationships with Fluor Corporation or a related entity.

8. The Corporate Security Group, based upon the standards and review criteria applied to all entities which sought to qualify as subcontractors for Fluor on the LOGCAP project, determined that ISDM was a qualified bidder. Jonathon Cooper, currently a Director of Corporate Security and at that time a Senior Security Manager in FGG, was primarily responsible for determining whether ISDM was a qualified bidder.

9. In addition to being qualified from a technical standpoint, ISDM was a small, "veteran owned" business as the term is defined under certain government contracting criteria. Both the LOGCAP IV contact and Federal Acquisition Regulations encourage and reward contractors for providing bidding opportunities to veteran owned small businesses.

10. Once the Corporate Security Group determined that it was a qualified bidder, ISDM's bids were evaluated by Contracts. That group was tasked with determining which qualified bidders

Declaration of Thomas Flores in Support of Fluor Intercontinental, Inc.'s Motion to Dismiss or Stay Action For *Forum Non Conveniens*

would become winning bidders and be awarded contracts to provide security personnel under LOGCAP.

11. I personally participated in several face-to-face meetings with Jim Earl and others at FGG offices in Greenville, South Carolina. Those meetings pertained to topics such as what ISDM would need to do to become a qualified bidder. My recollection is that the individuals that participated in those discussions included Fluor employees Jonathon Cooper, Dan Collins, me, and Jim Earl and Jeff Earl from ISDM.

12. In addition, to support its activities for Fluor once it became a subcontractor under LOGCAP, ISDM chose to establish and maintain an office in Greenville, South Carolina. I visited that office twice to be briefed on the activities that were occurring at that office. Such activities included personnel briefing, logistics and administrative activities. I met ISDM employee Mel Kahue during my visits. Any in-person meetings that I have had with an ISDM representative where the topic of the meeting was LOGCAP have occurred in person in Greenville or by telephone. While Jim Earl and I have met in Houston and Orlando for business reasons, the purpose of those meetings were to discuss commercial, not government, security work.

13. Based on my communications with Jim Earl and my interactions with that office and its personnel, ISDM set up its Greenville, South Carolina office in order to handle administration and logistics for ISDM personnel near the Fluor Mobile Deployment Center, which is also located in Greenville, South Carolina. Such functions that I understood were being undertaken at ISDM's Greenville office included personnel health and security screenings, training, and the provision of equipment. It is my understanding that timekeeping, payroll and personnel functions were also handled out of that office.

14. Jim Earl had the title of CEO of ISDM and Jeff Earl its President. I know that either ISDM or Jim or Jeff Earl rented an apartment in Greenville for Jim and Jeff Earl to use when they were in

-5-

town. I know that Jim Earl resides in Orlando, Florida and to the best of my knowledge ISDM did not between 2009 and June 30, 2011 have a separate office in Orlando. Rather, to the best of my knowledge Jim Earl used his home address for ISDM's Orlando address. I know that Jeff Earl lives on Coronado Island (San Diego), California. I never met with anyone from ISDM in California regarding any work for Fluor Corporate Security.

15. In late 2010, Fluor Intercontinental made the business decision that it would seek to move away from using subcontracts to perform certain functions under its LOGCAP contract with the U.S. government. As it related to ISDM, the decision was made to perform security services directly and thereby eliminate the need for a subcontractor such as ISDM. I learned of this decision from Jonathon Cooper, though I understand that George Rabb, the Country Manager for LOGCAP in Afghanistan, was a primary decision maker. I discussed this decision with Jim Earl in about November/December 2010 by telephone. I had several other communications with Jim Earl in which we discussed this situation and other potential opportunities for ISDM to work with Fluor to provide commercial, as opposed to government, security services.

16. It has always been my understanding that the July 2010 Task Order between ISDM and Fluor provides that ISDM was to provide "up to" 30 Security Managers and 50 Security Coordinators to support LOGCAP IV operations in Afghanistan from July 8, 2010 to June 30, 2011.

17. I have always understood that the term of the July 2010 Task Order was from July 2010 to June 2011 and that Fluor could extend the term at its option. I never represented to ISDM that Fluor would continue doing LOGCAP business with ISDM after June 2011.

18. Fluor's Corporate Security group, without any objection from ISDM, had hired several ISDM contractors directly to work for Fluor. I had conversations with Jim Earl in which he presented this as a benefit to working with ISDM as a subcontractor. In addition, it was my view that given what I understood was the decision of Fluor senior project management for LOGCAP that the

– 6 –

option years under the July 2010 Task Order would not be exercised, Fluor could direct hire ISDM personnel to provide security services for Fluor after the ISDM/Fluor LOGCAP relationship ended.

19.    The burden to Fluor and its employees located in South Carolina to testify and attend trial in Los Angeles is substantial. In addition to the out-of-pocket costs of plane flights and hotels, I estimate that any need to give testimony across the county in California would take the Fluor employee away from his or her regular work duties for at least 3 days.

20.    Litigating this case in California will place a substantial burden on Fluor and its employees. Fluor's South Carolina office is the U.S. base of operations for its security personal deployed in Afghanistan. These employees are witnesses to this dispute. Making these employees available for depositions or trial in Los Angeles versus South Carolina is extremely time consuming and expensive. In addition to the time and travel costs involved, requiring that employees based in Afghanistan travel to California adds economic and operational burdens to Fluor. The schedules of employees deployed overseas are highly regimented, and typically consists of cycles of three months in Afghanistan, followed by approximately ten days of paid leave. Making these witnesses available to come to California would require operational and logistic adjustments that affect Fluor's overall security operations. Fluor will either need to bring these employees back from Afghanistan contrary to established schedules (altering security schedules and forcing other personnel to carry out the witnesses' duties in Afghanistan) or produce them while they are home on leave (cutting short the precious little time these individuals have with their families and placing additional stress on these individuals). It would impose a serious burden on those individuals to travel from either Afghanistan, or their homes in the U.S. to California for purposes of this litigation. In contrast, producing these same employees in South Carolina, at Fluor's U.S. base of operations, will be considerably less difficult.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 7 –

Declaration of Thomas Flores in Support of Fluor Intercontinental, Inc.'s Motion to Dismiss or Stay Action For *Forum Non Conveniens*

I declare under penalty of perjury of the laws of the United States of America and the state of California that the foregoing is true and correct. Executed this 7th day of March, 2012 in Houston, Texas.

TOM FLORES

Declaration of Thomas Flores in Support of Fluor Intercontinental, Inc.'s Motion to Dismiss or Stay Action For *Forum Non Conveniens*